# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DEMETRIA VAUGHN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:19-CV-01201-JAR |
| | ) |
| STEFAN EICHHORN, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court upon Plaintiffs Demetria Vaughn and Glen Walker's Motion for New Trial. (Doc. No. 228). Defendants responded in opposition. (Doc. No. 230). Plaintiffs have not filed a reply and the time to do so has passed. For the reasons set forth below, the Court will deny the motion.

### Background

Plaintiffs Demetria Vaughn and Glen Walker brought this medical malpractice action against Defendants Stefan Eichhorn and Anesthesia Partners. Plaintiffs alleged Defendants' negligence caused the death of their mother, Precious Sims. The action was tried to a jury between July 13, 2021 and July 16, 2021. The jury returned a verdict in favor of the Defendants. Plaintiffs now move for a new trial pursuant to Federal Rule of Civil Procedure 59(a).

### Legal Standard

Under Fed. R. Civ. P. 59(e), a court may alter or amend a judgment. The Rule serves the "limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d

1284, 1286 (8th Cir. 1998) (internal citation omitted). A Rule 59(e) motion "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted). Furthermore, an evidentiary ruling will only justify a new trial where the "ruling constituted a clear and prejudicial abuse of discretion affecting a substantial right of the objecting party." *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1113 (8th Cir. 2020) (quotation and citation omitted). *See also Simpson v. Cnty. of Cape Girardeau, Mo.*, 879 F.3d 273, 277 (8th Cir. 2018) ("We will only reverse an improper evidentiary ruling if it affected a party's substantial rights or more than slightly influenced the verdict.").

**Discussion**

Plaintiffs argue a new trial is warranted due to five errors: 1) Defense counsel implied a criminal standard applied in this matter; 2) Defendants' expert witnesses Dr. Fendrich and Dr. Hartmann gave improper, non-disclosed opinion testimony; 3) Defendants introduced evidence of informed consent; 4) Plaintiffs' expert witness Dr. Graham's testimony was improperly limited; and 5) the Court improperly excluded evidence of its order limiting Defendants' expert witness's deposition fee. Defendants argue the Court should deny Plaintiffs' motion, as there was no error in the underlying trial and Plaintiffs have failed to show prejudice.

**Defendants' counsel referenced "guilt" at trial**

Plaintiffs first claim a new trial should be granted because Defendants' counsel made statements during trial and in closing argument that implied a criminal standard applied. Plaintiffs point to only one specific instance of such a statement: "defense counsel suggested that

2

the jury would have to find Defendants 'guilty' of medical malpractice" during closing arguments. (Doc. No. 228 at 2). Plaintiffs failed to object to this statement at trial. "A failure to object to statements made during closing argument waives such an objection." *Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002).

Even if Plaintiffs had properly preserved their objections, the Court nevertheless concludes that passing references to "guilt" do not justify a new trial. "When courts have granted a new trial based on comments made by counsel, it often involves emotionally-laden statements at closing that inflamed the passions of the jury." *Bayes v. Biomet, Inc.*, No. 4:13-CV-00800-SRC, 2021 WL 3286594, at *4 (E.D. Mo. Aug. 2, 2021) *See also Gilster v. Primebank*, 747 F.3d 1007, 1012 (8th Cir. 2014). Counsel's statement is not an emotional statement that inflames the passion of a jury. Furthermore, prior to deliberation the Court instructed the jury:

> You will have to decide whether certain facts have been proved by the greater weight of the evidence. A fact has been proved by the greater weight of the evidence, if you find that it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable. You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

(Doc. No. 214 at 4). The Court presumes that the jury follows its instructions. *See Conley v. Very*, 450 F.3d 786, 788 (8th Cir. 2006). Plaintiffs have not presented evidence suggesting the jury failed to follow the instructions or applied a criminal standard. As such, a new trial is not warranted.

**Dr. Fendrich and Dr. Hartmann's Testimony**

Plaintiffs next argue two of Defendants' expert witnesses—Dr. Fendrich and Dr. Hartmann—gave improper, non-disclosed opinion testimony. Plaintiffs argue both experts testified that allowing Ms. Sims' surgery to proceed despite her 2.7 serum potassium level was

proper and within the standard of care, and this testimony was not disclosed during the course of discovery. Plaintiffs also claim the testimony of both witnesses was "irrelevant." Defendants respond that Dr. Fendrich, the surgeon performing Decedent's procedure, testified about her determination that it was proper for the surgery to proceed and this opinion was consistent with her testimony at her deposition. Defendants next argue that Plaintiffs chose not to take Dr. Hartmann's deposition, and as such they cannot now complain opinions consistent with his disclosure which he expressed at trial are improper. Defendants further claim Plaintiffs cannot show these opinions prejudiced them.

Dr. Fendrich testified at her deposition that Ms. Sims' "potassium level, while low, was not low enough to be concerning to proceed to perform the laparoscopic hysterectomy." (Doc. No. 230-3 at 2). Dr. Fendrich's testimony about the potassium level at trial was consistent with her deposition. A new trial is not warranted where an expert's testimony is consistent with deposition testimony. *See Stanley v. Cottrell, Inc.,* No. 4:10CV1505 HEA, 2014 WL 518170, at *1 (E.D. Mo. Feb. 10, 2014).

Plaintiffs' argument that Dr. Hartmann's testimony was inconsistent with his disclosed testimony is also without merit. Dr. Hartmann was disclosed as a non-retained expert, expected to testify about "the anesthesia care and treatment provided to Precious Sims" and "the facts and opinions contained in the medical records and documents produced in this case…." (Doc. No. 230-1 at 3). Plaintiffs argue that Dr. Hartmann's "disclosure[] in no way encapsulate[s] or provide[s] notice of the opinions" expressed at trial. (Doc. No. 228 at 4). Dr. Hartmann's testimony at trial, including the testimony related to Ms. Sims' potassium levels, was consistent with his expert disclosure. His disclosure is not deficient simply because Plaintiffs decided not to depose him.

4

Plaintiffs next claim Dr. Fendrich and Dr. Hartmann's testimony was "irrelevant" and for this reason alone, their motion for a new trial should be granted. Plaintiffs fail to explain why the testimony of Ms. Sims' medical providers about her laparoscopic hysterectomy and the subsequent resuscitation efforts is irrelevant. Plaintiffs themselves designated Dr. Fendrich as a witness who may testify at trial. (Doc. No. 165). Dr. Fendrich and Dr. Hartmann's testimony was relevant to Plaintiffs' claims. It was not error to allow the expert witnesses to testify at trial.

**Informed Consent**

Plaintiffs claim that Defendants improperly introduced evidence of informed consent into the trial. Plaintiffs allege both Dr. Eichhorn and CRNA Sanford testified about obtaining informed consent and discussing the risks and benefits of this procedure with Ms. Sims. Defendants respond that defense counsel did not introduce evidence of informed consent, but Plaintiffs questioned CRNA Sanford about the "risks and benefits" of the laparoscopic hysterectomy. Plaintiffs have not met their burden of showing these unspecified statements prejudiced them at all, much less that a new trial would likely produce a different outcome. *See Hoffmeyer v. Porter*, No. 4:11-CV-898-JAR, 2013 WL 2898171, at *3 (E.D. Mo. June 13, 2013) (quoting *White v. McKinley*, 2009 WL 813001, at *11 (W.D. Mo. Mar. 26, 2009) ("A motion for a new trial based on erroneous [evidentiary rulings] should not be granted unless the evidentiary ruling[s] [were] so prejudicial that a new trial would likely produce a different outcome."). Rule 59(e) "is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 693 F. Supp. 2d 1038, 1053 (E.D. Mo. 2010) (quoting *Dale & Selby Superette & Deli v. U.S. Dep't of Agric.,* 838 F. Supp. 1346, 1348 (D. Minn. 1993). The Court cannot

5

conclude that the admission of testimony regarding informed consent was so prejudicial that a new trial would likely produce a different outcome.

**Dr. Graham's Testimony**

Plaintiffs next argue the Court improperly excluded certain of Dr. Graham's opinions. Dr. Graham is the Medical Examiner for the City of St. Louis. He performed an autopsy on Ms. Sims and determined her cause of death. Plaintiffs claimed he was not "permitted to testify regarding Precious Simms cause of death [sic], and regarding what did not cause Precious Simms to die." (Doc. No. 228 at 11). Defendants respond that this argument "makes no sense because the Court permitted Dr. Graham to testify to exactly what Plaintiffs wanted." (Doc. No. 230 at 11). The Court agrees. The Court denied Defendants' Motion in Limine seeking to limit Dr. Graham's testimony on factors that did not cause Ms. Sims' death and permitted Dr. Graham to testify about these factors at trial.

**Bias of Dr. Emmert**

Plaintiffs next argue the Court should have allowed them to introduce into evidence the Court's Order reducing Dr. Emmert's deposition fee. (Doc. No. 145). Plaintiffs contend that this order was relevant to Dr. Emmert's bias. Defendants respond that the order resolved a pretrial discovery dispute and is not relevant to Dr. Emmert's bias. The Court concludes that it was not error to exclude evidence of the order. Plaintiffs moved for a protective order reducing the deposition fee of Defendants' expert Dr. Daniel Emmert, arguing the fee of $750 per hour was not reasonable. (Doc. No. 139). The Court granted the motion in part and adjusted Dr. Emmert's fee to $550 per hour. (Doc. No. 145). The Court determined this fee was reasonable in part because Defendants offered "no documentary or other evidence demonstrating that Dr. Emmert traditionally charges [$750 per hour] or that he has actually charged this fee to the defendants."

6

*Id*. at 6. As such, the Court reduced Dr. Emmert's fee to $550, the same fee charged by Plaintiffs' expert.

It was not error to exclude the Court's order reducing Dr. Emmert's fee from trial. The order is of limited, if any, probative value. The Court did not find that a $750 fee is inherently unreasonable. Instead, the determination was based in large part on the lack of any evidence that Dr. Emmert regularly charged a fee of $750. Moreover, any prejudice to Plaintiffs was minimal. Plaintiffs were permitted to cross examine Dr. Emmert about the fees he charged in this case. A new trial is not warranted under these circumstances.

**Privileging and Credentialling**

Finally, Plaintiffs claim it was error to exclude evidence on the privileging and credentialling of CRNA Sanford. Prior to trial, Defendants filed a motion in limine to exclude any reference to privileges or credentialing, arguing that the evidence was not relevant because neither Defendants nor their agents were responsible for granting privileges to CRNA Sanford. (Doc. No. 169 at 18). The Court granted that motion. (Doc. No. 194). Plaintiffs argue the privileging and credentialing process is relevant to whether the employees of the hospital are competent and qualified, as well as the level of supervision CRNA Sanford required. Defendants respond that CRNA Sanford's privileges are not relevant to any facts at issue in this case and Plaintiffs cannot show prejudice.

"A new trial will be awarded only if an evidentiary ruling constituted a clear and prejudicial abuse of discretion affecting a substantial right of the objecting party." *Walmart Inc.*, 949 F.3d at 1113 (quotation and citation omitted). Plaintiffs claimed Dr. Eichorn and Anesthesia Partners failed to properly supervise CRNA Sanford during the procedure. SSM St. Mary's Hospital, not Dr. Eichorn or Anesthesia Partners, provided CRNA Sanford's privileges. As such,

7

the process by which CRNA Sanford received his privileges is not relevant to Plaintiffs' claim that Defendants failed to adequately supervise him. The Court's determination that the evidence was not admissible is not prejudicial error and a new trial is not warranted.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for New Trial [228] is **DENIED**.

Dated this 23rd day of December, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE